1  KENNETH H. WINE(#142385)
   Hallinan & Wine
2  345 Franklin Street
   San Francisco, CA  94102
3  Telephone:  (415) 621-2400
   Facsimile: (415) 575-9930
4  email: kenwine@hotmail.com

5  Counsel for KENNETH CAMPOS

6

7                    IN THE UNITED STATES DISTRICT COURT

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10

11 UNITED STATES OF AMERICA,            )   CR-19-280 RS (JSC)
                                        )
12                    Plaintiff,        )   **BAIL MEMORANDUM OF**
                                        )   **DEFENDANT KENNETH CAMPOS**
13        v.                            )
                                        )   Date: March 18, 2020
14 KENNETH CAMPOS, et al.,              )   Time: 10:30 a.m.
                                        )
15                    Defendants.       )   HON. MAGISTRATE JUDGE
                                        )   JACQUELINE SCOTT CORLEY
16 _____  )

17

18        In these extraordinary times, Defendant Kenneth CAMPOS requests release on bail

19 conditions that will provide sufficient security to assure his appearance, but will not unnecessarily risk

20 his life. The health risk to Mr. Campos, which is heightened because pretrial detention at Santa Rita Jail,

21 as described in detail below, violates due process, equal protection, amounts to cruel and unusual

22 punishment, and violates his basic human rights during the current pandemic. In addition to the routine

23 bail analysis, which supports Mr. Campos' release, this brief addresses the national emergency we now

24 face.

25        On March 16, 2020, the Judge Phyllis Hamilton, the Presiding Judge of this Court, issued

26 General Orders 72 and 73, which recognize the very real danger of close human contact, and the need

to protect the public, the Court, its staff, and the attorneys who appear before it.  Extraordinary measures are being taken to protect all of us who work in the court system.  There is no reason why extraordinary measures should not be taken when considering pretrial release for defendants who are presumed innocent.  To do otherwise violates treats pretrial detainees with less life-or-death protections than we are treating ourselves, violates equal protection, and is, ultimately, unhumane.

During the period of pretrial release, Mr. Campos intends to reside with his mother-in-law, his girlfriend, and their new, 2 week old baby at his mother-in-law's apartment in South San Francisco. The Court can order electronic monitoring to insure his location is known at all times, and limit his outdoor activities as it deems appropriate.

## I.      COVID-19 Outbreak

As of March 12, 2020, the new strain of coronavirus which causes COVID-19, has infected over 132,300 people, leading to at least 4,954 deaths worldwide.[1]    On March 4, 2020, Governor Newsom declaring a State of Emergency for California. On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[2] On March 13, 2020, President Trump has declared a National Emergency.

On March 17, 2020, extraordinary protective measures have been taken including a Shelter-in-Place order Issued by Mayor Breed, effective March 17, 2020, requiring all citizens in San Francisco to stay at home except for essential service providers.  Similar orders exist in the counties surrounding San Francisco.

The CDC has issued guidance that individuals take immediate preventative actions, including avoiding crowded areas and staying home as much as possible.[3]  With 300 confirmed cases

---

[1] *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (March 12, 2020), *at* **https://nyti.ms/2U4kmud** (updating regularly).

[2] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* **https://bit.ly/2W8dwpS**.

[3] *People at Risk for Serious Illness from COVID-19*, CDC (March 12, 2020) *at* **https://bit.ly/2vgUt1P**.

in the Bay Area that indicate community spread, we must take every necessary action to protect vulnerable inmate populations and the community at large.

### A.    Conditions of Confinement and Spread of COVID-19

Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease.[4]  Inmates cycle in and out of detention facilities from all over the world and the country, and people who work in the facilities, including correctional officers, and care and service providers leave and return daily, without screening.  Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited.[5]  Many people who are incarcerated also have chronic conditions, like diabetes or HIV, which makes them vulnerable to severe forms of COVID-19.  According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[6]  Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[7]

In China, officials have confirmed the coronavirus spreading at a rapid pace in Chinese prisons, counting 500 cases.[8]  Secretary of State Mike Pompeo has called for Iran to release Americans

---

[4] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, at **https://doi.org/10.1086/521910.**

[5] Laura M. Maruschak et al. (2015). Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, at **https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf**

[6] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), at **https://bit.ly/2W9V6oS.**

[7] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) at **https://bit.ly/2TNcNZY.**

[8] Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider (Feb. 21, 2020) at **https://bit.ly/2vSzSRT.**

detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[9]  Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country.[10]

## II.    Specific Conditions at the Santa Rita Jail

As the Court is aware, there was just a massive outbreak of the infectious disease at Santa Rita Jail, entailing the closure and limitation of visits to inmates housed there.  Whether or not it is the flu, as reported by the Jail authorities, or the Covid-19 virus seems up in the air, since, as of this date, there has been little availability of testing for the general population, let alone inmates at Santa Rita. Whatever disease just spread through Santa Rita, it is clear proof of the vulnerability of the population and the ability of disease to spread quickly in crowded, confined conditions.

The spread of the virus cannot be prevented for inmates at Santa Rita.  They are obviously not able to engage in social distancing and self-quarantine precautions as recommended by the CDC; they share toilet and sinks; and they are often crowded in confined spaces with dozens of inmates contained in one room.  Moreover, as additional people are arrested who have been out in the community as the coronavirus spreads, if they are not symptomatic, they will be brought into the jail and held with the existing population, bringing COVID-19 into this population held in large numbers, close quarters, and low sanitary conditions.

In short, Santa Rita Jail lacks the resources necessary to engage in the prevention of spreading Covid-19 to its population.  Regardless of his liberty, what is becoming clear is that the life of Mr. Campos is now at stake.

---

[9] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) *at*   https://cnn.it/2W4OpV7.

[10] Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020) *at* **https://apnews.com/af98b0a38aaabedbcb059092db356697**.

## II.    Argument

Notwithstanding the usual arguments for bail, a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or *for another compelling reason*." 18 U.S.C. § 3142(i).

Liberty is the norm and "detention prior to trial or without trials is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). One charged with a crime is, after all, presumed innocent. *Stack v. Boyle*, 342 U.S. 1, 4 (1951). A single individual unnecessarily detained before trial is one individual too many, and the increasing use of the practice places tremendous wear on our constitutional system. *United States v. Montalvo-Murillo*, 495 U.S. 711, 723–24 (1990) (Stevens, J., dissenting, joined by Brennan and Marshall, JJ.). Due to the crucial interests involved, it follows that a "case-by-case" approach is required at any stage of the case in assessing the propriety of pretrial detention. See *United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (discussing due process analysis for evaluating propriety of prolonged pretrial detention, and the interests at stake) (citations omitted), cert. dismissed sub nom., *Melendez-Carrion v. United States*, 479 U.S. 978 (1986).

The courts have long recognized that there is no greater necessity than keeping a defendant alive, no matter the charge. As Judge Weinstein held, "We do not punish those who have not been proven guilty. When we do punish, we do not act cruelly. Continued incarceration of this terminally ill defendant threatens both of these fundamental characteristics of our democracy." *United States v. Scarpa*, 815 F.Supp.88 (E.D.N.Y. 1993) (pretrial defendant with AIDS facing murder charges released on bail because of the "unacceptably high risk of infection and death on a daily basis inside the MCC").

This Court should consider the "total harm and benefits to prisoner and society" that pretrial imprisonment of Mr. Campos will yield, relative to the heightened health risks posed to to him during this rapidly encroaching pandemic. See *Davis v. Ayala*, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring) (calling for heightened judicial scrutiny of the projected impact of jail and prison conditions

on a defendant); *United States v. Mateo*, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004) (reducing sentence where defendant's pretrial conditions were "qualitatively more severe in kind and degree than the prospect of such experiences reasonably foreseeable in the ordinary case").

### III.    Conclusion

From Mr. Campos' perspective his life—not only his liberty—is on the line, creating a powerful incentive to abide by any release conditions the Court may impose. For the reasons set forth above, the Court should order his release to his mother-in-law's house, under such terms and condition as it sees fit.

Respectfully submitted,

HALLINAN & WINE

Dated: March 17, 2020

/s/ Kenneth Wine
Kenneth H. Wine
Attorney for Defendant
KENNETH CAMPOS